# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### at GREENEVILLE

GEORGE ARTHUR "LEE" SMITH,     )
                                         )
        Petitioner,            )
                                         )
v.                                   )          No. 2:12-cv-399-CLC-SKL
                                         )
TONY HOWERTON, Warden,       )
                                         )
        Respondent.       )

## <u>MEMORANDUM OPINION</u>

In March of 2006, Petitioner George Arthur "Lee" Smith (hereinafter "Smith" or "Petitioner") was convicted of first degree premeditated murder by a jury in the Hamblen County, Tennessee Criminal Court, receiving a life term of imprisonment for this offense. Petitioner has now filed this pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254, raising multiple grounds for relief in his challenge to the legality of his confinement [Doc. 2].

Warden Tony Howerton has filed a response, maintaining that relief is not warranted with respect to Smith's claims and, in support of his position, has submitted copies of the state court record [Docs. 7-9, 10, Addenda Nos. 1-4]. Petitioner has filed a reply, in which he addresses a single claim, i.e., that counsel's failure to file a suppression motion constituted ineffective assistance, suggesting that the state court's disposition of that claim was based on an unreasonable application of the governing Supreme Court precedent and on an unreasonable determination of the facts in light of the evidence presented to the state court [Doc. 13, Reply pp. 4-12].

For reasons which appear below, this petition will be **DENIED**.

# I. PROCEDURAL HISTORY

On November 19, 2007, Smith's conviction and those of his codefendants were affirmed on direct appeal by the Tennessee Court of Criminal Appeals (hereinafter "TCCA"). *State v. Smith*, No. E2006-984-CCA-R3-CD, 2007 WL 4117603 (Tenn. Crim. App. Nov. 19, 2007), *perm. app. denied* (Tenn. 2008). On February 25, 2008, the Tennessee Supreme Court (hereinafter "TSC") denied his application for permission to appeal. *Id.*

Petitioner next challenged his conviction under the Tennessee Post-Conviction Procedure Act, by means of filing on February 23, 2009, a petition for post-conviction relief [Addendum 3A, vol. 1]. *Smith v. State*, No. E2010-00488-CCA-R3-PC, 2012 WL 260022 (Tenn. Crim. App. Jan. 30, 2012), *perm. app. denied* (Tenn. 2012). After holding an evidentiary hearing on the claims, the state post-conviction court denied the petition and the TCCA affirmed the denial. *Id.*, 2012 WL 260022, at *10-18. Petitioner's request for permission to appeal was likewise denied by the TSC on June 25, 2012.

There followed this instant timely § 2254 habeas corpus application.

# II. FACTUAL BACKGROUND

The following factual recitation is taken from the TCCA's post-conviction opinion, *Smith*, 2012 WL 260022, at *1-16, and, where noted, from the state court record.

Donald Wilder, Jr., an important witness in multiple pending drug prosecutions in state court, was murdered in June of 2003. Wilder was last seen with Smith and Shannon Lee Jarnigan, a co-defendant. An investigation ensued, and a warrant was issued authorizing a search of the trailer where they were staying. During the execution of the search warrant, both suspects were placed in the back seat of a police cruiser, in which had been installed a device that recorded their conversation. The relevant portion of the conversation follows:

[Jarnigan]:.... They know what happened to [the victim] too.

....

[Smith]: You don't know nothing about [the victim]....

[Jarnigan]: If you go[,] I'll come bail you out. Okay. Just ... just say it was yours and I didn't know nothing about it.

[Smith]: Alright. Come bail me out ... alright? ... know nothing about [the victim].

[Jarnigan]: ... He said something about you know what happened to [the victim] and something that we're all gonna have a discussion about it. I said I....

....

[Smith]: Just stick to the story.... They'll probably get me for the scales and ... if they don't find it. Okay. You know all that s***[']s hid over, ones over....

....

[Smith]: .... f*** the dope ... about [the victim].

[Jarnigan]: Well I don't know.

[Smith]: I don't know nothing about [the victim]. I'm just telling the truth I'm gonna tell em [sic] the truth. You know, you know I don't know what happened.

[Jarnigan]: That one's Chris Smith right there.

[Smith]: I know. He's homicide.

[Jarnigan]: He's .... you ...

[Smith]: The search warrant wasn't for the dope....

....

[Smith]: I need to read that mother f***ing search warrant .... didn't show me no [sic] search warrant.

[Jarnigan]: Ask, holler at dude and ask him.

[Smith]: I need to, I need to read the search warrant man. F*** that. I ain't [sic] got no gun I ain't [sic] got nothing, nothing here that'll link us. Clothes, shoes, nothing.... What I mean is ... I still go, I, I, I, don't have no [sic] new shoes.

....

3

[Smith]: I need to read the search warrant.... I want to know if you are searching for f\*\*\*ing evidence due to a homicide or you searching for f\*\*\*ing drugs. What are you searching for?

*Smith*, 2012 WL 260022, at \*3.

The investigation continued, and Smith and two co-defendants were charged with first degree premeditated murder in connection with Wilder's shooting.

Various witnesses offered proof at the trial. Chad Smith, an agent with the Tennessee Bureau of Investigation ("TBI"), testified that, in July of 2003, he investigated Wilder's disappearance and that he interviewed Smith, who gave a statement discussing his interactions with Wilder. Smith said that he had last seen Wilder when he jumped out of the car Smith was driving and began chasing a man with whom Wilder had engaged in an argument concerning whether Wilder was a snitch. Smith also said that he had stayed at different motels in the vicinity of Exit 4 and that he registered at those motels using false names, including James Jones. Smith denied that he owned a gun.

Agent Smith followed up on Smith's statement related to motel registrations and discovered that rooms had been rented at the Hillcrest Inn, off Interstate 81 near Exit 4, on June 25, 2003, in the name of George Smith and, on June 26, 2003, in the name of Lee Smith. Agent Smith searched an area near the Hillcrest Inn, where a witness had seen Smith and Jarnigan walking with Wilder, and found a bullet and, nearby, a wallet containing Wilder's identification. Agent Smith reviewed Petitioner's cell phone records and found that calls had been made between the cell phone and Wilder's residence before 7:00 a.m. on June 26, 2003, around the time that he went missing.

Smith gave another statement, in which he confessed to shooting Wilder. Smith said that, on the morning of June 26, 2003, Wilder called Smith on his cell phone while Smith was staying at the Hillcrest Inn and that Wilder came to the motel, already "high" when he arrived.

4

Smith said that, at some point, a drug delivery was made to the motel and that they both proceeded to get "high." Smith told Agent Smith that he and Wilder walked to a water tower located behind the motel and began to urinate, while they stood back-to-back. Smith admitted that, while Wilder was still urinating, Smith pointed a gun he had been given at the back of Wilder's head, but had a change of heart and was lowering the gun when it accidentally discharged into Wilder's head.

Smith stated that he ran back to the motel and discarded the clothing he was wearing in a dumpster. Smith further stated that he returned to the crime scene two days later, after he remembered that he had left a beer bottle, which he had been carrying when he shot Wilder. Smith found the body with maggot infestation around the eyes, covered it with some grass, and tossed the beer bottle in a dumpster.

Another witness at the trial, Phyllis West, testified that on June 28, 2003, Smith told her that he was "sorry but he had to do it," and explained, "We were in the woods but he didn't feel a thing, he was high."

Also testifying was Danielle Lynne Epps, who stated that she was introduced to Smith as "the one that was going to take [Wilder] out" and that once she heard West and Smith discuss that Smith would kill Wilder. Epps also related that she heard Smith say that he was either going to shoot the victim or get him messed up on drugs.

Connie D. Lawson, Defendant Smith's sister, testified that, in 2003, both Smith and Jarnigan lived with her and that, during this time, she saw Smith with a black pistol, which was equipped with a laser, wrapped in a white towel, and loaded with a clip. She also testified that she saw Smith fire the pistol while he was at her house. Lawson stated that on June 26, 2003, she dropped Jarnigan off at the Hillcrest Inn and that, as Lawson was leaving the motel, she saw

Smith, Jarnigan, and Wilder walking from the motel room toward a wooded area in the back. Lawson also stated that, later that evening, she saw Smith at their mother's house, where he asked her to give him a ride.

Lawson testified that she drove Smith, Jarnigan, and a little red-haired boy to the boy's house and then dropped off Smith and Jarnigan at a motel. Lawson said that she saw Smith and Jarnigan the next day wearing clothes that Jarnigan had bought the previous day and carrying two blue bags tied at the top. When she saw them the following day, they no longer had the blue bags.

Lawson further testified that she talked with Smith, who was crying "really hard," and that he told her that he had shot Wilder in the back of the head, to which Jarnigan interjected that they had "killed him execution style." Later, Smith told Lawson that Wilder's hair flew into Smith's mouth when he shot him, that he had moved the body, and that it looked as though dogs had been eating the body. Thereafter, Lawson took Jarnigan to the Roe Junction community and on the return trip, Jarnigan pointed to a spot where she and Smith had thrown "evidence out."

On December 7, 2003, the police searched the area where Jarnigan had disclosed that they had thrown the murder weapon and found a .380 high point semi-automatic pistol with a laser sight and a clip or magazine. A bullet retrieved from the crime scene and one retrieved from 611 King Street, where Lawson lived and where she stated that Smith had fired a black pistol, were fired by the same pistol, according to a TBI ballistics expert [Addendum 1D, vol. 8, T. Tr. p. 99, Addendum1E, vol. 9, T.Tr. p. 736-737].

Michael Brassfield testified that, about four days after the victim became missing, Smith and he retrieved the victim's body from the back of the Hillcrest Inn, put the body in a truck, and dumped it in a hayfield on River Road.

6

According to other testimony at trial, skeletal remains were found on River Road, scattered over a hillside. Included among the remains was a skull with a hole in the back, consistent with a bullet hole. Portions of the remains were 300 yards from the original search sight—a considerable distance from where police found the body and where Smith had said the murder occurred. Although Smith had indicated that the murder was committed in Jefferson County, the body was found in Hamblen County.

A forensic anthropologist, who assisted in recovering and analyzing the human remains, testified that she had concluded that the reason the bones were scattered across a large area was because animals had access to the remains. This expert also stated that the body appeared to have decomposed largely at the site of the shooting.

A bone from those skeletal remains and a blood sample from Wilder's sister were subjected to mitochondrial DNA testing, with the results from the test indicating that the bone produced a mitochondrial profile consistent with the Wilder's sister's profile. The prosecution's theory was that Smith had been paid with illicit drugs and money to kill Wilder to prevent Wilder from testifying in drug cases.

On this evidence and additional evidence concerning the crime, the Hamblen County Criminal Court jury convicted Smith of the charged offense.

## III. DISCUSSION

Smith's § 2254 petition lists eighteen separately numerated grounds for relief: Claims 1 and 2 are challenges to the sufficiency of the convicting evidence; Claims 3, 4 and 7 allege trial court errors; Claims 5 and 6 involve allegations of a biased juror and the discriminatory use of peremptory challenges; and Claims 8 through 18 are comprised of allegations of ineffective assistance of counsel [Doc. 2, Pet. p. 6-11, 18-31]. The Warden argues, in his answer, that

Petitioner has procedurally defaulted Claim 7 and that he is not entitled to relief with regard to the state court decisions rejecting his remaining claims on the merits, given the deferential standards of review set forth in 28 U.S.C. § 2254.

The Court agrees with Respondent Warden concerning Petitioner's entitlement to habeas corpus relief and, for the reasons which follow, will **DENY** the petition and **DISMISS** this case.

The Court first turns to the claim which Respondent maintains has been procedurally defaulted.

### A.      Procedural Default - Claim 7

Warden Howerton asserts a procedural default defense against Claim 7, involving Smith's challenge to one of the trial court's evidentiary rulings.  Petitioner asserts, in this claim, that his right to due process was violated by the admission into evidence of the audio recording of a conversation between Jarnigan and himself which occurred in the back seat of a patrol car. In this conversation, they discussed prior drug activity and Smith's parole status.

A state prisoner who petitions for habeas corpus relief must first exhaust his available state court remedies by presenting the same claim sought to be redressed in a federal habeas court to the state courts. 28 U.S.C. § 2254(b)(1).  The exhaustion rule requires total exhaustion of state remedies, *Rose v. Lundy*, 455 U.S. 509 (1982), meaning that a petitioner must have fairly presented each claim for disposition to all levels of appropriate state courts.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-47 (1999).  A claim must also be offered on a federal constitutional basis—not merely as one arising under state law.  *Stanford v. Parker*, 266 F.3d 442, 451 (6th Cir. 2001) (citing *Riggins v. McMackin*, 935 F.2d 790, 792-93 (6th Cir. 1991)).

"Technical" exhaustion of state remedies is a kind of procedural default which applies to a petitioner who fails to raise his federal claim in the state courts and who is now barred by a state procedural rule from returning with the claim to those courts. Such a petitioner has met the technical requirements of exhaustion (i.e. there are no state remedies left to exhaust) and is deemed to have exhausted his state remedies, but to have done so by way of a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

A procedural default forecloses federal habeas review, unless a petitioner can show cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation. *Id.* at 732. Absent cause and prejudice, a petitioner who shows that he is actually innocent can overcome the procedural hurdle as well. *Murray v. Carrier*, 477 U.S. 478, 496, 492 (1986).

In his brief to the TCCA, Smith argued that permitting this tape recording to be offered as proof at trial violated a Tennessee evidentiary rule, which provides that evidence of other crimes, though admissible for other purposes, cannot be admitted to prove the character of the person in order to show conformity therewith [Addendum 2, Doc. 4, Petr's App. Br. p.17-21]. There was no suggestion in the brief that the admission of the tape recording was constitutionally improper, only that it violated state law.

The TCCA reasoned that the references to Smith's possession of drugs and drug paraphernalia and to his parole status did not fall within the purview of the state procedural rule because they were not offered as character evidence or to show action in conformity with a character trait, but instead were submitted to prove Smith's knowledge about the murder and to complete the story of the crime. *Smith,* 2007 WL 4117603, at *32.

9

Where state courts have spoken on a state law issue, it is not the role of a federal habeas court "to reexamine state-court determinations of state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A decision which rests entirely on state law generally is not of federal concern. *See e.g., Swarthout v. Cooke*, 562 U.S. 216, 222 (2011) (finding that, unless a federal right is at stake, a federal court's finding of error is irrelevant); *Rivera v. Illinois*, 556 U.S. 148, 161-62 (2009) (observing that, where states have decided issues as a matter of state law, "federal judges or tribunals lacked statutory authority to adjudicate the controversy").

Clearly, the claim was offered on a state law basis and the TCCA decided it on that basis. Because Smith did not present his claim on a constitutional footing in the state courts and because he has no remaining opportunity to do so, given the one-year statute of limitations and the one-petition rule which apply to post-conviction petitions in Tennessee, *see* Tenn. Code Ann. § 40-30-102(a) and (c), the claim has been technically exhausted, *see Castille v. Peoples*, 489 U.S. 346, 351-52 (1989) (finding that "[t]he requisite exhaustion may nonetheless exist, of course, if it is clear that [Petitioner]'s claims are now procedurally barred under [state] law"), but, at the same time, is procedurally defaulted. *Coleman*, 501 U.S. at 732.

Smith has offered nothing by way of cause and prejudice. Since no cause and prejudice exist to excuse the procedural default of Claim 7, federal review is foreclosed.

### B. Adjudicated Claims

Adjudicated claims are evaluated under the review standards contained in the Antiterrorism and Effective Death Penalty Act (AEDPA), codified in 28 U.S.C. § 2241, which instruct a court considering a habeas claim to defer to any decision by a state court concerning the claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or

10

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(1)-(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or resolves a case differently on a set of facts which cannot be distinguished materially from those upon which the precedent was decided. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" prong of § 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in Supreme Court cases which governs the issue but unreasonably applies the principle to the particular facts of the case. *Id*. at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *See id*. at 411; *see also Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").

This is a high standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington*, 562 U.S. at 102). Further, findings of fact which are sustained by the record are entitled to a presumption of correctness—a presumption which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### 1. Insufficient Evidence (Intent)

In this claim, Smith maintains that there was not sufficient evidence of premeditation, given his explanation that the shooting was an accident. More specifically, Smith maintains that

he changed his mind about killing Wilder and that, as he was lowering the firearm, it discharged accidentally, killing Wilder. To bolster his version of how the shooting occurred, Smith points out that Agent Smith confirmed that Petitioner never said that he shot Wilder intentionally.

The controlling rule for resolving a claim of insufficient evidence is contained in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Gall v. Parker*, 231 F.3d 265, 287-88 (6th Cir. 2000) (commenting that *Jackson* is the governing precedent for claims of insufficient evidence.), *superseded by statute on other grounds as recognized by Parker v. Matthews*, 132 S. Ct. 2148 (2012). In *Jackson*, the Supreme Court held that evidence, when viewed in the light most favorable to the prosecution, is sufficient if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. Resolving conflicts in testimony, weighing the evidence, and drawing reasonable inferences from the facts are all matters which lie within the province of the trier of fact. *Id.* at 319; *Cavazos v. Smith*, 132 S. Ct. 2, 6 (2011) ("[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"(quoting *Jackson,* 443 U.S. at 326)).

A habeas court reviewing an insufficient-evidence claim must apply two levels of deference. *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). Under *Jackson*, deference is owed to the fact finder's verdict, "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (quoting *Jackson*, 443 U.S. at 324 n.16). Under AEDPA, deference is also owed to the state court's consideration of the trier-of-fact's verdict. *Cavazos*, 132 S. Ct. at 6 (noting the double deference owed "to state court decisions required by § 2254(d)" and "to the state court's already

deferential review"). Hence, a petitioner "bears a heavy burden" when insufficiency of the evidence is claimed. *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

When this claim was offered on direct review, the TCCA began its discussion by defining the offense of conviction. Citing to Tenn. Code Ann. § 39-13-202(a)(1), the TCCA stated: "First degree murder is "[a] premeditated and intentional killing of another." *Smith*, 2007 WL 4117603, at *17. The TCCA defined "premeditation" as:

> [A]n act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

*Id.* (quoting Tenn. Code Ann. § 39-13-202(d)).

The TCCA added that premeditation is a jury question and may be established by circumstances surrounding the killing, based upon such factors as "the use of a deadly weapon upon an unarmed victim, the particular cruelty of the killing, declarations by the defendant of an intent to kill, evidence of procurement of a weapon, preparations before the killing for concealment of the crime, . . . calmness immediately after the killing, . . . planning activities by [a defendant] prior to the killing, . . . [a defendant's] prior relationship with the victim, and the nature of the killing." *Id.* (all internal citations omitted).

Summarizing the proof which sustained the first degree premeditated murder conviction, the TCAA pointed to evidence that Smith admitted he accepted money and drugs in exchange for killing Wilder; that he was given, and accepted, a pistol to commit this crime; that he talked to various people about plans to kill Wilder; and that he used drugs with Wilder, took Wilder on a walk, and then, as Wilder was urinating, shot Wilder in the back of the head. *Id.*

13

The TCCA recognized that, where the sufficiency of the evidence is challenged, the relevant question is whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could have found all the essential elements of the offense beyond a reasonable doubt. The TCCA cited to *Jackson* and, therefore, its decision was not contrary to the controlling legal rule in Supreme Court cases. *See Gall*, 231 F.3d at 287-88. Hence, this Court's task is to determine whether the TCCA unreasonably applied *Jackson* to the facts of Smith's case.

The TCCA acknowledged that Smith claimed that he changed his mind at the last second but that the pistol fired anyway, but pointed out that the jury, which heard this explanation of how the shooting occurred, rejected it by rendering its verdict of guilty. The TCCA likewise rejected Smith's *Jackson* claim, finding he was not entitled to relief.

Petitioner has presented nothing to show that the TCCA unreasonably determined that the evidence presented to the jury was sufficient to sustain his first degree premeditated murder conviction. Indeed, given the undisputed wealth and quality of the evidence against Smith, this Court now finds that the state court's application of *Jackson* was not unreasonable and that its decision was not based on an unreasonable factual determination. No writ will issue with respect to this claim.

### 2. Insufficient Evidence (Venue)

Smith maintains, in his second claim, that Tennessee law requires that venue be proven by a preponderance of evidence, but that he was indicted for a killing in Hamblen County, whereas the proof revealed that the shooting occurred in Jefferson County.

When this issue was raised on direct appeal, the TCCA, citing to the Tennessee Constitution and case law, held that "sufficient evidence exists to support that Hamblen County

14

was a proper venue for this prosecution." *Smith*, 2007 WL 4117603, at *19. The state court reasoned that, although the proof disclosed that the shooting occurred in Jefferson County, Hamblen County was the location where the bullet was found, where Smith agreed to kill the victim, where Smith discussed luring Wilder from his home, and where Smith received and fired the murder weapon—all of which constitute sufficient evidence that Smith, while in Hamblen County, determined to kill Wilder and thereby committed an element of first degree premeditated murder while in Hamblen County. *Id.*

It is doubtful that Petitioner has offered a cognizable constitutional claim. *See Caudill v. Scott*, 857 F.2d 344 (6th Cir. 1988) (Sixth Amendment right of accused to be tried in the state and district where crime allegedly was committed refers only to federal judicial districts and, thus, no constitutional right is implicated by a change of venue in state prosecution); *Nichols v. Bell*, 440 F.Supp.2d 730, 825 (E.D. Tenn. 2006) ("There is no provision in the Constitution mandating a trial in the county where the jury is selected."), *aff'd sub nom. Nichols v. Heidle*, 725 F.3d 516 (6th Cir. 2013); *Peek v. Carlton*, 2008 WL 4186939, *15 (E.D. Tenn. Sept. 5, 2008) ("[Petitioner's] claim regarding the failure to grant a change of venue involves the alleged failure of the trial judge to comply with state law and thus is not cognizable in federal habeas proceedings.").

But if this venue claim, as it has been presented in Smith's habeas corpus petition, is a cognizable federal claim, he has not provided the Court with evidence to show that the TCCA's disposition of the issue was contrary to or an unreasonable application of well-established Supreme Court precedent. This is especially true where, as one court has noted, there is no Supreme Court decision on point. *See Stevenson v. Lewis*, 384 F.3d 1069, 1071 (9th Cir. 2004)

(observing that "[t]he Supreme Court has not decided whether the Fourteenth Amendment incorporated the Sixth Amendment's vicinage right").

Put simply, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (citations and internal quotation marks omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law.") (citation and internal quotation marks omitted). Thus, even if the Court were to find that Smith has asserted a cognizable constitutional violation, the resulting decision would not be contrary to or an unreasonable application of clearly established federal law in a Supreme Court case. Petitioner is due no relief on his second insufficient-evidence claim.

### 3. Failure to Sever

In this claim, Smith maintains that he was denied his Sixth Amendment right to compulsory process, due process of law, and a fair trial due to the trial court's failure to grant his motion for a severance. More specifically, Petitioner argues that the prosecution's theory of the case was that the killing was a murder for hire and that consolidating the cases for trial disenfranchised him from calling his co-defendants to testify for the purpose of challenging the State's theory.

In addressing Smith's severance claim, the TCCA found that joinder was proper, under state criminal procedural rules, because each co-defendant was charged with accountability for the victim's murder. The TCCA further found that trial court "meticulously went over each statement" and that it redacted any mention of any other defendant from those statements, so that

there was no violation of Smith's right of confrontation, as explained in *Bruton v. United States*, 391 U.S. 123 (1968).[1] *Smith*, 2007 WL 4117603, at *22. Finding no constitutional violation and, hence, no abuse of discretion, the TCCA rejected Petitioner's claim.

Under Tennessee law, a defendant is entitled to severance from other defendants if deemed necessary to promote a fair determination of a defendant's guilt. Tenn. R. Crim. P. 14(c)(2)(i). The decision of whether to grant a severance lies within the trial judge's discretion. *State v. Dotson*, 254 S.W.3d 378, 387 (Tenn. 2008).

The resolution of this issue, in the main, was bottomed on state law governing joinder and severance of criminal trials. But whether the denial of a severance violated state law is not a cognizable claim in this habeas court. *Combs v. Tennessee*, 530 F.2d 695 (1976). The only constitutional issue residing in this claim is whether the denial of a severance impinged on Petitioner's right to due process of law, as secured by the Fourteenth Amendment to the United States Constitution. *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007) (citing *Corbett v. Bordenkircher*, 615 F.2d 722, 724 (6th Cir. 1980)).

To prove a due process violation, a petitioner must show that the joint trial "result[ed] in prejudice so great as to deny [his] . . . right to a fair trial." *Id.* (quoting *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986)). Joint trials of co-defendants are generally favored; a habeas petitioner bears a heavy burden to show that he was denied a fair trial by the failure to sever his trial from his co-defendants' when a petitioner and all co-defendants allegedly participated in the same

---

[1] In *Bruton*, the Supreme Court found that, at a joint trial, the admission of a co-defendant's confession which implicated a defendant resulted in prejudicial error and thus violated the Confrontation Clause. 391 U.S. at 127. But *Bruton* does not apply to confessions from which all references to the nonconfessing defendant have been excised, so long as the confession, as redacted, will not result in prejudice to that defendant. *Richardson v. Marsh*, 481 U.S. 200, 210 (1987).

offense. *See United States v. Horton*, 847 F.2d 313, 317 (6th Cir. 1988); *see also Richardson v. Marsh*, 481 U.S. 200, 210 (1987) (observing that joint trials avoid inconsistent verdicts and the scandal and inequity of such verdicts and also enable a more accurate assessment of relative culpability).

Smith has not carried his heavy burden. *United States v. Lopez*, 309 F.3d 966, 971 (6th Cir. 2002) (finding that "[t]he prejudice from a failure to sever must be of a 'substantial, undue, or compelling' nature, which would have denied petitioner a fair trial and warranted a single trial to determine his guilt or innocence"). As noted, the TCCA examined the record and found that the trial court "meticulously went over each statement to ensure that any mention of a co-defendant was removed" and redacted any such a reference. *Smith*, 2007 WL 4117603, at *22. This is a factual finding which is entitled to a presumption of correctness, absent any clear and convincing evidence to the contrary.

Since *Bruton* only applies to confessions of nontestifying co-defendants which are facially incriminating of another defendant, *Lang v. Gundy*, 399 F. App'x 969, 976 (6th Cir. 2010) (citing *Richardson*, 481 U.S. at 202), and since all references to co-defendants were redacted from the statements, *see Richardson*, 481 U.S. at 208-09 (observing that "*Bruton* can be complied with by redaction"), Smith has failed to show that the denial of his motion for severance resulted in prejudice so great as to deny him a fundamentally fair trial.

### 4. Denied Change of Venue

In this claim, Petitioner maintains that Hamblen County, the situs of his trial, is such a small geographic area that jurors generally know one another, that the publicity in Hamblen County about his case was significant, and that, thus, it was impossible to obtain a fair trial in

that location. He asserts that the trial court's denial of his motion for a change of venue denied him his right to due process of law and a fair trial.

When the claim was carried to the TCCA on direct review, it noted that no proof had been offered by Petitioner to show that "any of the jurors who actually sat and rendered verdicts were prejudiced by pretrial publicity," *Smith*, 2007 WL 4117603, at *21, though the burden of making this showing lies on a petitioner.

The Constitution protects a criminal accused's right to a fair trial, which is effectuated, under the Sixth Amendment, by impaneling a jury of impartial, "indifferent" jurors who render a verdict based on evidence adduced at the trial. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). To show that an accused has not been tried by an impartial jury, a petitioner must point to particular jurors actually selected to serve in his case who were prejudiced against him. *Id.* at 724 (finding that a petitioner has the affirmative duty to establish "the actual existence of [an opinion as to the merits of a case] in the mind of the juror"); *Smith v. Phillips*, 455 U.S. 209, 217 (1982) (stating that a petitioner must show actual bias, to wit, that "the ability of the particular jury that heard the case to adjudicate fairly" was compromised).

A petitioner can show actual prejudice by showing that a juror had a fixed opinion about guilt and could not lay aside his opinion and render a verdict based on the evidence presented in court. *Irvin*, 366 U.S. at 723. However, a court will presume prejudice if a petitioner shows that his case falls within a narrow category of cases where the influence of the news media is such as to have created an inherently prejudicial environment. *Murphy v. Florida*, 421 U.S. 794, 798-99 (1975) (Prejudice is presumed where "a trial atmosphere . . . utterly corrupted by press coverage . . . has pervaded the proceedings."); *Ritchie v. Rogers*, 313 F.3d 948, 952–53 (6th Cir. 2002) (presumption of prejudice warranted "where an inflammatory, circus-like atmosphere pervades

the courthouse and the surrounding community"). Yet "[q]ualified jurors need not . . . be totally ignorant of the facts and issues involved." *Murphy*, 421 U.S. at 799-800; *see Skilling v. United States*, 561 U.S. 358, 398 (2010) ("Jurors . . . need not enter the box with empty heads in order to determine the facts impartially.").

In finding that Smith had shown no constitutional infringement on his right to an unbiased jury due to the trial court's denial of the motion for a change of venue, the TCCA cited to state court cases quoting *Dobbert v. Florida*, 432 U.S. 282 (1977), which in turn, cited to *Irvin* and *Murphy*. Thus, the TCCA's decision is not contrary to *Irvin*, the controlling Supreme Court precedent. *Ritchie*, 313 F.3d at 954-55 (finding that *Irvin v. Dowd* contains the "correct federal constitutional standards").

The TCCA also held that Smith had presented no proof that any juror was prejudiced—a factual finding based on the TCCA's review of the record which must be afforded a presumption of correctness, absent any clear and convincing evidence to the contrary. *Brumley v. Winard*, 269 F.3d 629, 637 (6th Cir. 2001) (citing *Sumner v. Matta*, 449 U.S. 539, 546-47 (1981)). Petitioner has offered no such clear and convincing evidence.

Petitioner's failure to adduce proof that any juror who sat on his case was actually prejudiced against him or that the pretrial publicity "utterly corrupted" the trial atmosphere, *see Murphy*, 421 U.S. at 798, leads to the conclusion that the TCCA did not unreasonably apply *Irvin* and that its decision is not based on unreasonable factual determinations.

### 5. Peremptory Challenges

Petitioner asserts that the trial court permitted the prosecution to use its peremptory challenges improperly when it excluded two potential jurors. One potential juror who was

excluded was of Taiwanese descent and the other was of Hispanic descent. No sufficient race-neutral reasons were shown for the peremptory challenges, so maintains Petitioner.

In reviewing this claim on direct appeal, the TCCA noted that, in response to the defense's challenge to the exclusion of these jurors, the trial court held that the prosecution's explanation as to why it had exercised its peremptory challenges against the two potential jurors was race-neutral. The TCCA, citing primarily to *Batson v. Kentucky*, 476 U.S. 79 (1986), but also to *Purkett v. Elem*, 514 U.S. 765 (1995), and *Hernandez v. New York*, 500 U.S. 352 (1993), agreed with the trial court that the prosecution articulated race-neutral reasons for challenging the jurors. The TCCA found no reason to grant relief with respect to this claim.

The disposition of this claim rests on the principles enunciated in *Batson* and its progeny. *See Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (holding that the framework for analyzing discriminatory peremptory challenges is contained in *Batson*, as reaffirmed in *Purkett* and *Hernandez*). Therefore, the TCCA's adjudication of this claim was not contrary to the relevant well established rule in Supreme Court cases.

As the TCCA stated, the process which is applied to a *Batson* claim consists of these three steps: (1) a petitioner must make a prima facie showing that the prosecutor exercised peremptory challenges on the basis of race; (2) if step one is met, the prosecutor must articulate a race-neutral reason for excluding the potential juror in question; and (3) the trial court must then determine whether a petitioner has proven intentional discrimination. *Smith*, 2007 WL 4117603, at *24.

The TCCA, which observed that the trial court implicitly determined that Smith had satisfied step one, proceeded to determine whether he had satisfied his burden with respect to steps two and three.

The TCCA noted that the trial court had observed that the Taiwanese juror stated on orientation day that she could not understand English very well. The prosecution explained that this juror's difficulty in understanding the English language led it to conclude that she could not understand what jury duty meant. The trial court found that this was a sufficiently race-neutral reason for the State's use of a peremptory challenge.

The juror of Hispanic descent, according to the prosecution, was an interpreter and a "sort of advocate" for defendants in state court, who had been interviewed and investigated by the TBI for taking money from Hispanics to get them out on bond. The prosecution stated that it believed that the juror was aware of the investigation, even though it lacked evidence to initiate criminal proceedings against her. The trial court found that the prosecution's explanation regarding this juror likewise was a sufficiently race-neutral reason for the exercise of its peremptory challenge. The TCCA, concluding that those proffered reasons were race-neutral and that the trial court had found that the reasons given were legitimate and non-discriminatory, declined to grant relief.

The Supreme Court has held that "a state court's finding of the absence of discriminatory intent is 'a pure issue of fact' accorded significant deference," and that the deference afforded to a state court's credibility finding that the prosecution has offered legitimate, non-discriminatory explanations especially is warranted since this finding "largely will turn on evaluation of credibility." *Miller-El*, 537 U.S. at 339 (quoting *Hernandez*, 500 U.S. at 364-365, and *Batson*, 476 U.S. at 98, n.21). The prosecutor's explanation for striking those two jurors does not appear to have been a pretext for a discriminatory motive and there is no evidence, certainly none which is clear and convincing, which proves otherwise.

Accordingly, affording the appropriate deference to the finding of no discriminatory motive, this Court concludes that the TCCA did not unreasonably determine the facts from the proof presented nor unreasonably apply *Batson* or its line of cases in rebuffing this claim. Habeas corpus relief is not justified with respect to Smith's *Batson* claim.

### 6. Biased Juror

Smith claims that one juror, Bill Waddell, left sections of his juror questionnaire blank. It was established that this juror had a family relationship to Darrel Horton, who was included on the State's witness list as a potential witness. Juror Waddell had similar familial relationships with others, such as members of law enforcement. Though these relationships demonstrated evident bias or a strong potential for bias on the part of this juror, the trial court did not dismiss Waddell from the petit jury, but instead allowed him to serve on Petitioner's jury. The trial court's purported error, according to Petitioner, violated his right to a fair trial by an impartial jury.

When this issue was raised on direct appeal, the TCCA noted that the trial court had called the jury out and personally questioned Juror Waddell, who responded, under oath, that he did not recall knowing a Darrell Horton. The TCCA likewise noted that, at the hearing on the motion for a new trial, Juror Waddell's niece, Tammy Cox, testified that she thought that Juror Waddell knew Darrell Horton, who was the father of her two children, though she had not talked to her uncle, had seen him only casually at family meetings, which occurred a few times yearly, and had not spoken with him about his remembrance or his knowledge of Darrell Horton.

The TCCA observed that the trial court had "accredited Juror Waddell's statement, finding that he was honest when he said that he did not know anyone by that name" and that the lower state court had also found that he had not deliberately misrepresented anything. *Smith*,

2007 WL 4117603, at *27-28. The TCCA then stated that Smith had not shown that Juror Waddell knew Darrell Horton or even knew the name of the father of his niece's children. The TCCA observed, as did the trial court, that Horton did not testify at Smith's trial. The TCCA concluded that Smith had not proven that Juror Waddell was biased or prejudiced because he knew Darrell Horton.

With respect to the issue regarding Juror Waddell's alleged failure to disclose that his daughter worked for law enforcement, the TCCA pointed out Tammy Cox was the only witness who testified that Juror Waddell's daughter worked for law enforcement and that there was no record evidence proving that his daughter's association with law enforcement resulted in actual bias or partiality on the part of this juror. The TCCA went on to determine that Smith had failed to meet his burden of establishing a prima facie case of bias or partiality on the part of Juror Waddell.

At the outset, it is noted that, in Petitioner's brief on appeal, he adopted by reference the briefs of his co-defendants, Shannon Jarnigan and Nathaniel Allen, regarding the trial court's failure to grant a new trial based upon Juror Waddell's disqualification to serve on the jury [Addendum 2, Doc. 4, Petr's App. Br. p.16]. In Ms. Jarnigan's appellate brief, she framed this issue exclusively as a violation of state law involving juror disqualification. *Jarnigan v. Johnson*, No. 2:12-cv-205 (E.D. Tenn. 2015) [Addendum 1, Doc. 1, App. Br. pp. 43-46]. Unsurprisingly, in addressing Petitioner's claim, the TCCA likewise cited exclusively to the Tennessee Constitution and to state court cases. One of the cases cited by the TCCA was *State v. Akins*, 867 S.W.2d 350, 354 (Tenn. Crim. App. 1995), in which it was stated that the Tennessee Constitution, "like the Sixth Amendment to the United States Constitution, provides the accused with the right to trial 'by an impartial jury.'" *Id.* at 354.

While this Court cannot review the decision of the state court concerning whether state law required Juror Waddell's disqualification, *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), the Court perceives that the TCCA's adjudication of the claim, despite its references solely to state law and state court cases, encompassed Petitioner's federal claim, by means of its citation to *Atkins*.

As stated earlier in this Memorandum Opinion, a criminal defendant is entitled to be tried by a panel of impartial, indifferent jurors. *Irvin,* 366 U.S. at 722. Allowing even one biased juror to sit at a trial violates a defendant's Sixth Amendment right to a jury free of bias. *Williams v. Bagley*, 380 F.3d 932, 944 (6th Cir. 2004) (citing *Morgan*, 504 U.S. at 729). A deliberate concealment of material information justifies an inference of bias, but actual bias must be shown where a juror is found not to have deliberately concealed information. *Id.* at 946.

Here, the TCCA held that Petitioner had shown no evidence of bias, which, by negative inference, comports with a finding that Juror Waddell was impartial. A "state court's finding of impartiality is a factual determination entitled to 28 U.S.C. § 2254(e)'s presumption of correctness." *Hanna v. Ishee*, 694 F.3d 596, 616 (6th Cir. 2012) (citing *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003)). That finding may "be overturned only for 'manifest error.'" *Id.* (quoting *Hill v. Brigano*, 199 F.3d 833, 843 (6th Cir. 1999), in turn quoting *Patton*, 467 U.S. at 1031)). Smith has presented no clear and convincing evidence to undercut this factual finding, which will be presumed correct.

Nor has Smith pointed to any Supreme Court precedent which shows the TCCA's adjudication of his claim involves an unreasonable application of the controlling rule in a Supreme Court case. Accordingly, given the lack of any showing of bias and the difficulty faced by a petitioner challenging a state court adjudication of a claim under the AEDPA, *Woods v.*

25

*Donald*, 135 S. Ct. 1372, 1376 (2015) (instructing that "[w]hen reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong"), Petitioner can be granted no relief on his claim under the governing standards of review in § 2254(d).

### 7. Ineffective Assistance

#### a. Applicable Law

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. IV. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a break down in the adversary process that renders the result unreliable.

*Id*.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A petitioner asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional

judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Thus, it is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

Second, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 454-455 (quoting *Strickland*, 466 U.S. at 694). Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

### b. Alleged Attorney Errors

### i. Motion to Suppress

Smith alleges, in his first claim of ineffective assistance, that law enforcement authorities used a psychological ploy, disguised as a search warrant for the residence he shared with Jarnigan, to induce him to converse with her in a patrol car where they had been placed and which had been fitted with a recording device. The officers recognized that both would give incriminating evidence and statements relating to the murder and the disappearance of the victim. As the officers anticipated, Smith incriminated himself during the recorded conversation. Yet counsel did not file a pretrial motion to suppress under the authority of *Miranda v. Arizona*, 384 U.S 436 (1966), and *Rhode Island v. Innis*, 446 U.S. 291 (1980), though had he so done, the tape

recording would have been suppressed and the charges against Smith would have been dismissed.

The TCCA addressed this claim first by pointing to counsel's testimony at the post-conviction hearing, wherein he stated that he moved to suppress the audio recording, or portions of the recording, and partially was successful in that portions of the statement were redacted. Counsel further testified that he made no attempt to base suppression of the statement on a violation of *Miranda* because the statements were not given in response to questioning by law enforcement. Counsel explained that the police did not question Smith while he was in the patrol car and that the incriminating statements were made during the conversation between his client and Jarnigan, while police were not present. In later testimony, counsel said that Smith was asked by the officers to tell them what happened, before they closed the door to the patrol car, with Smith sitting inside.

The TCCA cited to *Miranda* for its rule "that the prosecution cannot admit a statement by a defendant stemming from custodial interrogation unless it demonstrates the use of procedural safeguards effective to secure the privilege against self[-]incrimination." *Smith*, 2012 WL 260022, at *21 (citing *Miranda*, 384 U.S. at 444). The TCCA explained that "custodial interrogation" meant "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* (quoting *Miranda*, 384 U.S. at 444). Finding that the record did not reflect that Smith's incriminating statements were given in response to police questioning, the TCCA found that Smith had not shown a deficient performance on the part of counsel with respect to his failure to seek suppression of the statement based on a *Miranda* violation. It determined that Smith likewise had not demonstrated prejudice, given Smith's failure to establish that the statements

would have been suppressed, since Smith possessed no objectively reasonable expectations of privacy in the back seat of a police cruiser.[2]

The word "interrogation" refers "not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301 (footnote omitted). Yet even though police are aware of the possibility that a suspect might incriminate himself, "[o]fficers do not interrogate a suspect simply by leaving him alone and *hoping* that he will incriminate himself." *Arizona v. Mauro*, 481 U.S. 520, 529 (1987) (italics added); *United States v. Hernandez-Mendoza*, 600 F.3d 971, 977 (8th Cir.), *as amended* (July 7, 2010) ("[W]e see nothing so coercive about the trooper's simple act of leaving them alone in the patrol car that would justify characterizing [the trooper]'s behavior as interrogation."), *opinion amended on denial of reh'g*, 611 F.3d 418 (8th Cir. 2010).

Moreover, though the Supreme Court has yet to determine whether it is reasonable to expect that one's conversation in the back seat of a police car is private, all circuit courts which have ruled on the issue have rejected that proposition. *United States v. Colon*, 59 F. Supp. 3d 462, 466 (D. Conn. 2014) (listing cases).

To prevail on this claim, Petitioner must show that the TCCA's application of *Strickland* was not reasonable. This showing can be accomplished if Smith points to a well-established rule in a Supreme Court case, which holds: (1) that, contrary to what the state court found, his incriminating statements were given in response to police questioning and (2) that he had a reasonable expectation of privacy in the back seat of a police cruiser. Petitioner has not

---

[2] The Fourth Amendment to the Constitution protects against unreasonable searches and seizures. "The gravamen of a Fourth Amendment claim is that the complainant's legitimate expectation of privacy has been violated by an illegal search or seizure." *Kimmelman*, 477 U.S. at 374 (citing *Katz v. United States*, 389 U.S. 347 (1967)).

29

established either of these things and he, thereby, has failed to demonstrate that the TCCA's adjudication of his claim "was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U. S. at 103. The writ of habeas corpus will not issue with respect to this alleged attorney error.

### ii. Forfeiture by Wrongdoing

Petitioner asserts that counsel failed to investigate fully the case against him, including performing adequate legal research so as to discover that the doctrine of forfeiture by wrongdoing refuted the prosecution's theory as to the motive for the murder. In a related sub-claim, Petitioner asserts that trial counsel was ineffective for failing to argue the doctrine of forfeiture by wrongdoing in order to refute the State's theory on motive.

Citing to a state evidentiary rule, the TCCA explained that the doctrine of "forfeiture by wrongdoing" is a hearsay exception, which allows the admission of a statement "against a party that has engaged in wrongdoing that was intended to and did procure the unavailability of the declarant as a witness." *Smith*, 2012 WL 260022, at *21 (quoting Tenn. R.Evid. 804(b)(6)). The TCCA found that Smith's reliance on this hearsay exception was misplaced; that he had failed to show that the doctrine of forfeiture would have been useful; that the doctrine of forfeiture by wrongdoing, in effect, was inapplicable to his case; and that presentation of the forfeiture-by-wrongdoing argument would not have resulted in a different outcome. Concluding that Smith had failed to show both a deficient performance and prejudice, the TCCA denied post-conviction relief.

The TCCA's finding that the evidentiary rule in question did not apply in Petitioner's case is a finding that binds this Court. "State courts are the final arbiters of their own state law." *Danforth v. Minnesota*, 552 U.S. 264, 291–92 (2008); *Douglas v. City of Jeannette*

*(Pennsylvania)*, 319 U.S. 157, 163–64 (1943) (observing that, as to state law, "the state courts are the final arbiters of its meaning and application, subject only to review by this Court on federal grounds appropriately asserted").

Failure to research and argue an evidentiary rule which does not apply does not fall outside "the wide range of professionally competent assistance" which the Sixth Amendment requires. *Strickland*, 466 U.S. at 690. Furthermore, no prejudice ensues from an attorney's failure to raise a meritless claim. *See Greer v. Mitchell*, 264 F.3d 663, 676 (2001); *Krist v. Foltz*, 804 F.2d 944, 946–47 (6th Cir. 1986). Therefore, in resolving this ineffective assistance claim, the TCCA did not unreasonably apply *Strickland*. This claim provides no basis for habeas corpus relief.

### iii. Failure to Call Witnesses (the Clarks)

Smith asserts, in his third ineffective assistance claim, that his state of mind was critical to his conviction, that there was proof that he was completely distraught after the murder, and that he had told his mother that he had shot Wilder accidentally. While counsel asserted a defense of an accidental shooting, he failed to call Petitioner's mother, Arthurine Clark, and/or Petitioner's stepfather, Louis Clark, either of whom could have substantiated that Petitioner had said that Wilder's shooting was an accident. Had counsel called to the stand one or both of the Clarks, their testimony would have provided important information to negate the mental element of the first degree murder offense.

In reviewing this claim, the TCCA first found that, while a petitioner who is claiming that trial counsel failed to present a witness at trial must call that witness to testify at the post-conviction hearing as to what the witness would have testified at trial, Smith did not call his stepfather at his post-conviction hearing. The TCCA noted that, absent such post-conviction

testimony, it would have to speculate as to the content of the witness's trial testimony. Declining to do so, the TCCA did not grant relief on the "stepfather-witness" claim.

The TCCA then reviewed counsel's alleged shortcoming in failing to call Smith's mother as a trial witness. Mrs. Clark testified at the post-conviction hearing that "Petitioner was intoxicated and told her that he had killed the victim by accident and that the gun had a trigger defect. She learned that the victim had died about two weeks later. When detectives subsequently interviewed her, she told them what Petitioner had told her. She also told Petitioner's trial counsel." *Smith*, 2012 WL 260022, at * 21. However, the TCCA noted that trial counsel testified that, although he had had several pretrial meetings with Mrs. Clark, he did not recall that she had ever told him about the events to which she testified at the post-conviction hearing.

The TCCA found that the trial court had credited trial counsel's testimony that, during meetings he had with Mrs. Clark, she had not mentioned Smith's intoxication or his statement that the shooting was an accident. The TCCA also held that counsel made a tactical decision, after adequate preparation, not to call her as a witness, since he believed that her testimony would have been discredited by the jury because she is Smith's mother.

Tactical decisions are especially difficult for a petitioner to challenge. *Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."). Moreover, "[a] strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001); *see Harrington*, 526 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable.").

Given the post-conviction court's finding as to Mrs. Clark's credibility and counsel's assessment of how her testimony would have been viewed by the jury, the Court does not find the TCCA's implicit determination that there was no deficient performance to have been an unreasonable application of *Strickland*. And it also remains that Smith has not shown his trial was replete with obvious unfairness based on counsel's tactical decision. Due to the lack of any showing of a prejudicial performance, the TCCA's resolution of this claim must remain undisturbed since it was neither an unreasonable application of *Strickland* nor based on unreasonable factual determinations.

### iv. Motion to Strike Witness's Testimony

Petitioner maintains, in his next claim, that the prosecutor prohibited his sister, Connie Lawson,[3] a key prosecution witness, from speaking with the defense and that counsel should have moved to exclude or strike her testimony on this basis. Had counsel filed the suggested motion, it would have eliminated from jury purview the only direct evidence from which the jury could infer the commission of a premeditated, execution-style killing and would have resulted in a reasonable probability that Smith would have been found not guilty of the offense.

When this issue was litigated in the post-conviction hearing, trial counsel testified that he "tried to have [Lawson's] testimony excluded at trial" based on "her unavailability and refusing to speak to [him]." *Smith*, 2012 WL 260022, at *22. The TCCA held that "trial counsel did, in fact, seek to exclude her testimony." *Id.* at *23. The TCCA's factual finding that counsel moved to exclude the testimony is presumed correct, absent clear and convincing contrary evidence,

---

[3] Though the TCCA's opinion refers to this witness as "Connie Lawson Musick" and as "Ms. Musick," Smith uses the name, "Connie Lawson," in his pleadings. Thus, to be consistent with Smith's filings, this witness will be referred to as "Connie Lawson" and "Lawson" in this Memorandum Opinion.

33

which has not been presented by Petitioner. Counsel cannot be held ineffective for failing to do that which he, in actuality, did.

In addressing the part of the claim involving the alleged attorney error in failing to move to strike Lawson's testimony, the TCCA recounted that, at trial, Lawson had "testified that she refused to speak with the Defendant's lawyers in preparation for his case because she had been threatened and did not know who to trust. [She] conceded that the State's attorney told her not to speak with the Defendants' attorneys." *Smith*, 2012 WL 260022, at * 23 (quoting *State v. Smith*, 2007 WL 4117603, at *11). The TCCA agreed with the post-conviction court's finding that Lawson's testimony at trial was inconsistent with her testimony at the post-conviction hearing and reasoned that, even if her trial testimony had been stricken, no different outcome would have ensued since the incriminating evidence against Petitioner had emerged from his own statements and from evidence provided by other witnesses. Concluding that Smith had not established prejudice, the TCCA granted no relief.

As the Supreme Court has instructed, "[s]urmounting *Strickland's* high bar is never an easy task," and the task is made "all the more difficult" when § 2254(d) applies. *Harrington*, 562 U.S. at 105. The robust evidence adduced against Petitioner at trial, including his statements, testimony of other witnesses concerning his well-aired plans to kill Wilder, and various other evidence reflecting intent, demonstrates that there is no substantial likelihood of a different result, even without Lawson's testimony. As the TCCA noted, "[t]he strength of the prosecution's case did not rest on Ms. [Lawson]'s testimony alone." *Smith*, 2012 WL 260022, at *23.

Therefore, the TCCA did not unreasonably apply *Strickland* in finding no prejudice and, thus, Smith is entitled to no relief on this claim of ineffective assistance.

### v. Failure to Argue Prosecutorial Misconduct

This claim is derivative of the previous one, in that Smith asserts that counsel gave him ineffective assistance by failing to argue, in the motion for a new trial and on appeal, that Lawson's testimony should have been stricken because the prosecution forbade her to speak to the defense. The post-conviction court, referring to the inconsistency between Lawson's trial testimony and her post-conviction testimony, found that Petitioner had not shown that the prosecution had prohibited Lawson from giving pretrial interviews [Doc. 8, Addendum 3A, vol. 2, Memorandum Opinion and Order p. 215]. Absent clear and convincing evidence to the contrary, of which there is none, this factual finding will be presumed correct.

The TCCA in turn pointed to trial counsel's explanation at the post-conviction hearing that he did not pursue this issue on direct appeal because Lawson's trial testimony concerning the prosecution's alleged prohibition on talking with the defense was not as emphatic as her post-conviction testimony. This testimony suggests that the decision not to press the claim on appeal was based on reasonable considerations and was tactical. Reasonable tactical decisions will not support a finding of a deficient performance. However, the TCCA denied relief based on the lack of a showing of prejudice.

The Supreme Court has ruled that counsel has no duty to raise every nonfrivolous issue that a criminal defendant requests. *See Jones v. Barnes*, 463 U.S. 745, 754 (1983); *see also Smith v. Murray*, 477 U.S. 527, 536 (1986) (observing that the "process of 'winnowing out weaker arguments on appeal and focusing on those most likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy") (quoting *Jones*, 463 U.S. at 751-52); *Engle v. Isaac*, 456 U.S. 107, 134 (1982) (observing that "the Constitution

guarantees criminal defendants a fair trial and a competent attorney [but] does not insure that defense counsel will recognize and raise every conceivable constitutional claim").

Because the post-conviction court made a factual finding that Smith had not demonstrated that the prosecution prohibited Lawson from speaking with trial counsel, there would have been no basis for raising this issue on appeal. Smith has sustained no resulting prejudice, as relief would not have been granted in connection with a groundless claim. *See United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991) (failure to make arguments that "are clearly destined to be unsuccessful" does not amount to ineffective assistance of counsel).

The TCCA did not unreasonably apply *Strickland* in finding no prejudice and in rejecting this claim of ineffective assistance. *Strickland*, 466 U.S. at 697 (holding that a claim of ineffective assistance may be disposed of based solely on the lack of prejudice). No relief is warranted with respect to this alleged failing on the part of counsel.

### vi. Failure to Request Accomplice Jury Instruction and Failure to Raise Claim on Motion for New Trial/Appeal

Smith maintains that Tennessee law prohibits a criminal conviction which is based solely on the testimony of accomplices and that the only real proof in the case against him was testimony presented by prosecution witnesses who would be deemed to be accomplices under Tennessee law. Had counsel requested an accomplice instruction, so Smith further maintains, there is a reasonable probability that he would not have been convicted of premeditated first degree murder.

When Smith raised this issue with the TCCA during his post-conviction appeal, it held that the instruction on corroboration of accomplice testimony should have been given and, thus, that trial counsel's performance was deficient in this regard. The TCCA went on to find that Petitioner had not shown prejudice given the "overwhelming corroborating evidence at trial,

36

including Petitioner's own statements that he made in the backseat of the police car and a detailed statement to law enforcement," as well as the results of an investigation conducted by law enforcement officials, which corroborated the confession. *Smith*, 2012 WL 260022, at *24.

Counsel's failure to request a state jury instruction, under some circumstances, could constitute ineffective assistance. *Breakiron v. Horn*, 642 F.3d 126, 136 (3d Cir. 2011) (holding that counsel gave ineffective assistance by failing to request a theft instruction, though the evidence supported it); *Jenkins v. Sec'y, Dep't of Corr.*, 520 F. App'x 871, 873 (11th Cir. 2013) (reviewing counsel's failure to request a state law self-defense instruction under *Strickland* and finding no ineffective assistance).

In evaluating this claim, the TCCA discussed the State's rule of corroboration, applied it to the evidence presented at Petitioner's trial, and found that the jury should have received that instruction. As noted previously, the Supreme Court teaches that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The TCCA's determination regarding Petitioner's entitlement to the state jury instruction is binding on this Court. *Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2004) (holding that the Court was constrained by a state supreme court's finding with regard to the correctness of jury instructions under state law).

Pointing to the wealth of corroborating evidence, among which was Smith's confession, his statements, and evidence gleaned from the investigation of the crime, the TCCA held that he could not show prejudice.

Given all this evidence of corroboration of the accomplices' testimony, there is not a reasonable probability that the trial results would have been different, had counsel requested the accomplice instruction. Thus, the TCCA did not unreasonably apply *Strickland* in determining

that no prejudice had been shown and in rejecting this claim of ineffective assistance. *Shafer v. Wilson*, 364 F. App'x 940, 951 (6th Cir. 2010) (finding no prejudice "given the unlikelihood that the omission of such instruction affected the outcome of the trial"). Thus, the writ will not issue with respect to this claim.

### vii. Failure to Seek Bad Acts Jury Instruction & Appeal

Petitioner asserts that state law prevents a defendant's prior convictions from being used as substantive evidence against him at a criminal trial. None of Smith's prior convictions were introduced at trial; only references to his prior bad acts which were contained in his statement were admitted into evidence [Addendum 3B, vol. 3, Post-Conviction Hrg. Tr., Test. of Jonathan Holcomb pp. 39-40]. Yet, according to Petitioner, the trial court failed to give an instruction advising the jury that it could not consider the prior bad acts references in his recorded statement as substantive evidence of his guilt and telling it that it could consider those bad acts only in assessing Smith's credibility. Petitioner surmises that, absent this instruction, there is a reasonable probability that he was convicted based on evidence of his prior bad acts and that counsel gave him ineffective assistance by failing to request such an instruction.

When this claim was presented to the TCCA, it described counsel's decision not to request a limiting instruction with respect to the bad acts evidence as tactical, explaining that "[c]ounsel considered requesting such a jury instruction and determined that the effect of the instruction would have been to cause more negative influence on the jury than had the jury just heard the proof without the instruction." *Smith*, 2012 WL 260022, at *25. Noting that Smith had not "established how he was prejudiced," the TCCA declined to grant relief on the claim. *Id*.

"Trial counsel is not constitutionally required to request a limiting instruction any time one could be given, because counsel might reasonably conclude that such an instruction might

inadvertently call attention to the evidence of prior bad acts." *Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007) (citing *Buehl v. Vaughn*, 166 F.3d 163, 170 (3d Cir. 1999)). This is exactly what happened in Petitioner's case.

As noted earlier in this opinion, a defense attorney's tactical decisions are especially difficult for a petitioner to attack. *See Strickland*, 466 U.S. at 690 (noting that strategic choices, preceded by a thorough legal and factual investigation, are practically impregnable). Moreover, "[a] strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001); *see Harrington*, 526 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable.").

Since the decision not to request the cited jury instruction was tactical and since Petitioner made no showing of prejudice during the state post-conviction proceeding, the TCCA's rejection of this claimed trial attorney error was not an unreasonable application of *Strickland*, and Smith is entitled to no § 2254 relief.

In the same vein, Petitioner alleges that counsel also gave ineffective assistance at the motion for a new trial and on appeal by failing to allege that the trial court should have given a limiting instruction relative to the bad acts evidence. The TCCA did not specifically address whether counsel was ineffective at the motion for a new trial and on appeal for failing to raise the limiting-instruction issue.

Yet, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must [engage in a rebuttable] presum[ption] that the federal claim was adjudicated on the merits." *Johnson v. Williams*, 133 S. Ct. 1088, 1096, 185 L. Ed. 2d 105, *reh'g denied*, 133 S. Ct. 1858, 185 L. Ed. 2d 858 (2013). If the claims presented to the state court are

similar, such as the ineffective assistance claims at issue here, this "makes it unlikely that the [TCCA] decided one while overlooking the other." *Id.* at 1098. Smith has presented nothing which would rebut the strong presumption that the TCCA adjudicated his claim.

In its opinion resolving Smith's post-conviction appeal, the TCCA held that trial counsel's failure to request such an instruction at trial did not constitute a prejudicial performance. As the Court has observed, appellate counsel is not required to present every nonfrivolous issue that a criminal defendant requests. *See Jones*, 463 U.S. at 754. "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003).

Because counsel did not render ineffective assistance by failing to request a limiting instruction at trial, it logically follows that the TCCA did not unreasonably apply *Strickland* in determining that counsel did not give ineffective assistance at the post-trial and appellate stage of the proceedings by failing to assert the same groundless claim. Appellate counsel is not required to raise issues which are doomed to fail, *see Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986), and cannot be ineffective when he does not raise such claims. *See Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (attorney not required to raise meritless issues); *Greer v. Mitchell*, 264 F.3d 663, 676 (2001).

### viii. Failure to Assert Intoxication Defense

Smith maintains in his next ineffective assistance claim that, though the record was replete with proof that he was always high on crack cocaine, mixed with alcohol and other mind-altering substances, counsel failed to assert a diminished capacity defense based on Smith's intoxication at the time of the offense. Petitioner maintains that the intoxication defense could

have been used in two ways. Counsel could have argued that Petitioner's alcohol and/or drug intoxication prevented his client from forming the requisite intent (i.e., premeditation) to commit a first degree murder. Arguing an intoxication defense also might have bolstered the theory that the shooting was accidental because Smith's intoxication made him clumsy in handling the weapon.

When the TCCA entertained this claim, it first noted that, despite evidence presented at trial that Smith had been using cocaine and alcohol on the day of the murder, no evidence had been adduced showing that he was so intoxicated as to render him unable to form the requisite premeditation. The TCCA then pointed to evidence supporting the element of premeditation, which included Smith's statement that he was given drugs, money, and a pistol to kill Wilder, that he discussed plans to kill Wilder with multiple individuals, that he believed that Wilder's former girlfriend could entice the victim out of his home, and that he used drugs with Wilder, took him on a walk, and shot him in the back of his head as he was voiding. The TCCA, presumably, was highlighting the inconsistency of the evidence at trial with the assertion of a voluntary intoxication defense.

After iterating all the evidence of premeditation and commenting that the jury which had heard evidence that the shooting was accidental rejected that theory, the TCCA found no deficient performance with respect to counsel's failure to assert an intoxication defense. Likewise, the TCCA found that Smith had not established prejudice because there was no independent proof of intoxication, since the only evidence of his intoxication was offered by Petitioner and his mother.

In Tennessee, voluntary intoxication "may serve to negate a specific intent required by the charged offense," though it is not technically a criminal defense. *State v. Burkley*, 804

S.W.2d 458, 461 (Tenn. Crim. App. 1990). Voluntary intoxication may be used only where there is evidence that "the intoxication deprived the accused of the mental capacity to form specific intent." *Harrell v. State*, 593 S.W.2d 664, 672 (Tenn. Crim. App. 1979). The TCCA specifically held that "there is no evidence that Petitioner was so intoxicated that he was incapable of forming premeditation," *Smith*, 2012 WL 260022, at *25, and that the proof was inconsistent with the use of the voluntary intoxication defense and, implicitly, would not support a voluntary intoxication defense.

The TCCA's interpretation and application of Tennessee law is not usually a cognizable matter in a federal habeas corpus proceeding. *Pudelski v. Wilson*, 576 F.3d 595, 610-611 (6th Cir. 2009) ("State law issues are not subject to habeas review. . . .") (citing *Estelle*, 502 U.S. at 67-68). The TCCA's findings that an intoxication defense would have been inconsistent with the evidence leads to the conclusion that counsel did not render a prejudicial performance by failing to assert this unworkable defense.

An attorney is not required to assert a frivolous defense simply to avoid a charge of ineffective assistance. *United States v. Churchill*, 19 F.3d 1434 (6th Cir. 1994). Put simply, "[a]n attorney is not required to present a baseless defense or to create one that does not exist." *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986) (citing *United States v. Cronic*, 466 U.S. 648, 656-57 n.19 (1984)). Where there is no proof that a petitioner is so intoxicated as to be incapable of forming the specific intent required for a conviction, counsel is not chargeable with ineffective assistance. *Id.* at 946 (finding no merit to ineffective assistance claim given the lack of "evidence that [the petitioner] was so intoxicated that he was unable to form the specific intent required for an armed robbery conviction"). And "[g]enerally, juries are not persuaded by an intoxication defense." *Boehm v. Crosby*, 146 F. App'x 422, 425 (11th Cir. 2005).

As it is, when § 2254(d) applies, the question is not whether counsel's actions were reasonable," but instead "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. Given the TCCA's factual findings based on its review of the record and the double deference owed to a state court's adjudication of a claim of ineffective assistance, the TCCA's decision did not result from either an unreasonable factual determination in light of the evidence before it or an unreasonable application of the controlling legal principles in *Strickland*. Therefore, Smith is due no relief on this claim.

### ix. Failure to Request Mistrial for Prosecutorial Misconduct and Failure to Raise Issue in Motion for New Trial/Appeal

These two claims are intertwined and have been combined for discussion because both involve counsel's alleged failure to object to the prosecutor's impermissible voir dire comment and closing argument. Smith maintains that the prosecutor improperly vouched for the credibility of the States' witnesses and the evidence presented; gave his personal opinion as to the evidence and Petitioner's guilt; misrepresented the evidence at trial; made personal attacks on Petitioner's character and credibility; and appealed to the jury's fears.

More specifically, Petitioner claims that the prosecutor portrayed him as an extremely bad person, and not a law-abiding citizen like the members of the prosecution team and the jury; attempted to enflame and prejudice the jury against him based on an exploitation of evidence of Smith's prior bad conduct and drug activity; and urged the jury, as the protector of community values, to send a message to its constituency with its verdict. Smith argues that, had counsel objected to this misconduct and requested a mistrial, there is a reasonable probability that he would not have been convicted of first degree murder and/or that a mistrial would have been granted.

43

One of the statements about which Petitioner complains was made by the prosecutor during voir dire, when he stated: "What I am trying to get across is the people like ourselves are not going to be in that element; that in order for us to get witnesses to the crime we have to go into the element that the defendant is in and get his friends and associates as witnesses."[4] *Smith*, 2012 WL 260022, at *26.

The TCCA accepted the State's argument that the purpose of the challenged statement was to explain to the jury that some of its witnesses would come from the criminal milieu and to "ensure that the potential members of the jury could look past the prior acts of the State's witnesses and review the evidence fairly." *Id.* The TCCA noted that counsel had testified that the questioned comment invariably is made at trials where informants are used and that he viewed the prosecutor's remark as "talking about everyone in general" and not as an attempt for the State's attorney "to put himself in the shoes of the jury." *Id.*

The TCCA then found that counsel's failure to object to the statement did not constitute a deficient performance and further found that Petitioner had offered no proof at the post-conviction evidentiary hearing to show that he was prejudiced by counsel's failure to object.

Petitioner's remaining claims involve the prosecutor's closing argument. Among the challenged remarks is this statement: "If our system of justice is going to continue to operate

---

[4] Petitioner asserts that, along the same lines, the prosecutor stated at closing: "Yes, they [the State's witnesses] have criminal records; yes, they are cocaine addicts, drug addicts. If they wasn't [sic] those type of people they wouldn't have been associated with the defendants. I mean, you know—the State didn't bring these witnesses to you today; these three defendants did. Ladies and gentlemen, when you are casting a play in hell, you don't find angels that play the part" [Doc. 3, Petr's Br. p. 91]. These specific cited comments were also entertained by the TCCA. *Smith*, 2012 WL 260022, at *18. Smith also alleges in his supporting brief that, in the closing argument, the prosecutor stated his personal opinion and vouched for the credibility of the State's witnesses [Doc. 3, Petr's Br. p. 93]. However, Petitioner has not connected any specific remark of the prosecutor to an impermissible attestation of a witness's believability or to the expression of a personal opinion. Therefore, only the comments entertained by the TCCA will be reviewed here.

44

here and this community be as great as it is and as strong as it is, these individuals need to go to prison for the rest of their life." *Id.*, 2012 WL 260022, at *27. The TCCA pointed out that, when counsel testified at the post-conviction evidentiary hearing, Smith failed to avail himself of the opportunity to question trial counsel about his failure to object to any of the prosecutor's closing remarks. Even so, the TCCA found that the comment was improper because it "seems to suggest that the jurors focus on the interests of the community rather than on [Petitioner's]' guilt." *Id.*

Yet, reasoning that the comment was "insignificant in light of the facts and circumstances of the case" and that the prosecution's case was strong, the TCCA determined that Petitioner had not shown any resulting prejudice. The TCCA declined relief on all claims of ineffective assistance with respect to counsel's failure to object to prosecutorial misconduct.

*Darden v. Wainwright* establishes that the applicable question when a prosecutor's remarks are challenged in a state prisoner's habeas corpus petition is "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. 168, 180 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see also Parker v. Matthews*, __ U.S. __, __, 132 S. Ct. 2148, 2153, 183 L. Ed. 2d 32 (2012); *Ross v. Pineda*, 549 F. App'x 444, 449 (6th Cir. 2013). A prosecutor's arguments which are undesirable or "even universally condemned' will not give rise to relief unless they deny a petitioner a fundamentally fair trial and thereby violate his right to due process of law. *Darden*, 477 U.S. at 180; *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (explaining that the misconduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial"). Of course, it must be remembered that the allegations of prosecutorial misconduct

were offered as illustrations of ineffective assistance of counsel, which is controlled by a *Strickland* analysis.

The Sixth Circuit has explained that, to show a deficient performance, "'defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice.'" *Schauer v. McKee*, 401 F. App'x 97, 101 (6th Cir. 2010) (quoting *Lundgren v. Mitchell,* 440 F.3d 754, 774–75 (6th Cir. 2006)). Given the double deference required under AEDPA to a state court's adjudication of a claim of ineffective assistance of counsel, Smith has failed to advance any evidence to surmount the presumption that the counsel made a strategic choice not to object to the prosecutor's remarks. *See Webb v. Mitchell*, 586 F.3d 383, 395 (6th Cir. 2009) (observing the petitioner had failed to "overcome 'the strong presumption' that his trial counsel conducted a reasonable investigation") (citing *Campbell v. Coyle*, 260 F.3d 531, 553 (6th Cir. 2002)).

With respect to the one instance where the TCCA found that an objection to the prosecutor's argument was warranted, so that, by logical inference, it likewise found that counsel's failure to object was a deficient performance, Smith has failed to show that there is a reasonable probability of a different outcome at trial, had counsel raised an objection. As the TCCA noted, the proof of guilt was strong and Smith did not present any evidence of prejudice at the post-conviction hearing. Since "*Strickland* places the burden on the [petitioner], not the State, to show a 'reasonable probability' that the result would have been different," *Wong v. Belmontes*, 558 U.S. 15, 27-28 (2009) (quoting *Strickland*, 466 U.S. at 694), and since Smith has not borne his burden, this Court finds that the TCCA's decision with respect to prejudice was not contrary to or an unreasonable application of *Strickland.*

Because Smith has not shown that the lack of an objection so infected his trial with unfairness as to make his resulting conviction a denial of due process and because eliminating weaker arguments in favor of concentrating "on those most likely to prevail . . . is the hallmark of effective appellate advocacy," *Jones*, 463 U.S. at 751-52, he has failed to establish that counsel rendered a prejudicial performance at the motion for a new trial or on appeal. To the extent that this issue was exhausted in the TCCA, Petitioner is not entitled to relief. *See* 28 U.S.C. § 2254(b); *see also Granberry v. Greer*, 481 U.S. 129, 133–34 (1987) (permitting a court to deny a habeas petition (or claim) on the merits, despite a failure to exhaust state remedies).

## IV.  CONCLUSION

For the above reasons, this *pro se* state prisoner's application for a writ of habeas corpus will be **DENIED** and this case will be **DISMISSED**.

## V.  CERTIFICATE OF APPEALABILITY

Finally, the Court must consider whether to issue a certificate of appealability (COA) should Petitioner file a notice of appeal. A petitioner may appeal a final order in a § 2254 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c). A petitioner whose claims have been rejected on a procedural basis must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001). Where claims have been dismissed on their merits, a petitioner must show reasonable jurists would find the assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484.

After having reviewed each claim individually and in view of the firm procedural basis upon which is based the dismissal of one claim and the law upon which is based the dismissal on

the merits of the rest of the claims, reasonable jurors would debate neither the correctness of the Court's procedural rulings nor its assessment of the claims. *Id.* Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

**AN APPROPRIATE ORDER WILL ENTER**.


/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**